## MORRISEY et al. v. SHENANGO FURNACE CO. et al.

(Circuit Court of Appeals, Eighth Circuit. April 14, 1922.)

No. 5938.

Injunction ⬤➡88—Decree limiting future expenditures of village held void for want of jurisdiction.

A court of equity is without jurisdiction to enjoin a village and its officers from expending for municipal purposes more than a sum prescribed during each six months of a four-year period in the future, and a decree granting such an injunction, there being no finding of any illegal action by defendants, held void.

In Error to the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Suit in Equity by the Shenango Furnace Company and others against The Village of Buhl and others. From a judgment adjudging E. J. Morrisey and others in contempt for violation of an injunction, they bring error. Reversed.

The Shenango Furnace Company, a corporation of Pennsylvania, and a taxpayer of the village of Buhl, a municipal corporation of Minnesota, and hereafter called plaintiff, on or about September 11, 1918, commenced an action in equity in the court below against said village and the president, recorder, treasurer, and trustees thereof, hereafter called defendants, for the purpose of enjoining and restraining said defendants and their successors in office from expending money or contracting obligations in the future in an amount greater than the court might find was a reasonable maximum amount for such a village to expend annually for village purposes. The water, light, power,

⬤➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and building commission and the public library board of said village and the members of said commission and board were subsequently made parties defendants.

The defendants answered the complaint of the plaintiff and on November 4, 1918, the cause came on for hearing, whereupon the following stipulation signed by counsel for the respective parties was filed in the trial court:

"It is hereby stipulated between the plaintiff herein and the defendants herein that the facts in said case are as set forth in the decree hereto attached, and that the court may order and enter the said decree and the injunction therein provided for, and that the same may be entered, without taxation of costs, forthwith."

A decree was entered pursuant to the stipulation on the same day as follows:

"This cause having come on for hearing before the undersigned, one of the judges of the court above entitled, Washburn, Bailey & Mitchell having appeared as solicitors and as attorneys for the plaintiff, and Victor L. Power, Fryberger, Fulton & Spear, and Thad S. Bean having appeared as solicitors and attorneys for the defendants, and stipulations having been entered into between said parties for a decree and the issuance of an injunction pursuant thereto, and the court being fully advised in the premises, the court now finds as follows:

"A. That the plaintiff is a foreign corporation organized and existing under and by virtue of the laws of the state of Pennsylvania and is a citizen of said state; that said plaintiff is a property owner and taxpayer in the defendant village of Buhl, and that the amount involved in this controversy is upwards of $3,000, exclusive of costs and interests; that the defendants and each of them are citizens and residents of the state of Minnesota, and the court has jurisdiction of said cause.

"B. Further, that the amounts hereinafter specified are the maximum amounts defendants are entitled to expend for and on behalf of all municipal purposes during the four-year period hereinafter specified; that it is necessary for the proper conduct of the municipal affairs of said defendant village that there be a prompt collection of all charges for water, light, and heating service furnished by said municipality; that in the pending litigation said defendant village has incurred certain attorney's fees and expenses; and, further, that it may be reasonably necessary and desirable for the defendant village or the defendant water, light, power, and building commission, as the case may be, to purchase a certain boiler, and, under certain conditions, for the defendant village to purchase a certain property for use as a public market or potato warehouse; and the court further finds that prior to October 1, 1918, certain claims were duly presented to the defendant village for expenditures theretofore made or liabilities incurred in its behalf; that there is now pending a certain order in this suit restraining and enjoining certain of said defendants and each of them from certain acts; and it is hereby ordered, adjudged and decreed:

"(1) That for a term of four years from and after October 1, 1918, the defendant village of Buhl, the defendant water, light, power, and building commission of said village, and the defendant public library board of said village, and all officers, agents, and employés of said defendants, and each of them, and all representatives and subsidiary boards of said village of Buhl, shall be and they hereby are limited to a total municipal expenditure of $48,000 for each six months period of said term, plus all local municipal revenues actually collected by or on behalf of said village, or any of said defendants, within each of said periods, for charges made and municipal service rendered during each such period, to private consumers, neither said village, nor any department, board, or commission thereof, or therein to be considered a private consumer within the terms of this judgment, all local municipal revenues collected by or on behalf of said village or any of said defendants, for charges prior to October 1, 1918, not to come within the said expenditures hereby limited, but to be applied on indebtedness accruing prior to October 1, 1918, the intention hereof being that said sum of $48,000 for each six months period is to be the maximum limit of expenditure of any funds collected or to be collected by general taxation, both through general levies of taxes and any levies for

the construction, maintenance, and support of the water, light, heat, and power plant, library, parks and all other municipal activities; that said total municipal expenditures for or on behalf of said village and all departments thereof including said commission and said board, pursuant to the foregoing, shall be and the same hereby are limited as follows, period by period:

"October 1, 1918, to April 1, 1919, the sum not to exceed $48,000 plus all local municipal revenues actually collected within said period for charges made and services rendered including municipal light, heat, or water service, within said period.

"April 1, 1919, to October 1, 1919, the sum not to exceed $48,000 plus all local municipal revenues actually collected within said period for charges made and services rendered, including municipal light, heat, or water service, within said period.

"October 1, 1919, to April 1, 1920, the sum not to exceed $48,000 plus all local municipal revenues actually collected within said period for charges made and services rendered, including municipal light, heat, or water service, within said period.

"April 1, 1920, to October 1, 1920, the sum not to exceed $48,000 plus all local municipal revenues actually collected within said period for charges made and services rendered, including municipal light, heat, or water service, within said period.

"October 1, 1920, to April 1, 1921, the sum not to exceed $48,000 plus all local municipal revenues actually collected within said period for charges made and services rendered, including municipal light, heat, or water service, within said period.

"April 1, 1921, to October 1, 1921, the sum not to exceed $48,000 plus all local municipal revenues actually collected within said period for charges made and services rendered, including municipal light, heat, or water service, within said period.

"October 1, 1921, to April 1, 1922, the sum not to exceed $48,000 plus all local municipal revenues actually collected within said period for charges made and services rendered, including municipal light, heat, or water service, within said period.

"April 1, 1922, to October 1, 1922, the sum not to exceed $48,000 plus all local municipal revenues actually collected within said period for charges made and services rendered, including municipal light, heat, or water service, within said period.

"The local municipal revenues referred to in the foregoing being only those collected from private consumers, as above specified; that said defendants and each of them, and all officers and employés thereof, be enjoined and prohibited from making any expenditure or incurring any debt or liability for or on behalf of said village or any commission or board thereof, or for any municipal purpose during any one of said six months periods in excess of said amount limited as aforesaid, nothing herein contained to affect the right of the defendants, or any of them, to levy or receive the amount of taxes which they are or may be authorized to levy by the statutes of the state of Minnesota in such cases made and provided, all tax collections within said four-year period to be used in the discharge of municipal indebtedness incurred prior to October 1, 1918, and thereafter, within the limits herein specified.

"(2) That said defendants and each of them, as the case may be, shall require prompt payment of all amounts which may become due on behalf of said municipality from every source other than taxes raised by general levy, and in particular, shall require prompt payment of all amounts which may become due for water, light, or heating service furnished by said village or said water, light, power and building commission.

"(3) That notwithstanding the foregoing, the defendant village or the defendant commission, as the case may be, may purchase a boiler for the municipal water, light, and heating plant, if the same be deemed necessary, at a price of approximately $22,000 for the purchase and installation of said boiler, the cost thereof not to be reckoned or included in said municipal expenditures limited as aforesaid; that the defendant village is hereby allowed and authorized to pay all its attorney's fees and expenses incurred by it in the

pending suit, said amounts not to be reckoned or included in said municipal expenditures limited as aforesaid.

"(4) That said defendant village shall be enjoined and restrained from purchasing the building commonly known as the Range Mercantile Company Building, or lot on which the same is situated, except and unless said village shall purchase the same from and out of the amount which said village is allowed to expend from and after October 1, 1918, up to April 1, 1919.

"(5) That any funds now on hand or which may be hereafter received during said four-year period by said defendants, or any of them, either from general taxation or any other source, shall be applied and expended in paying the principal and interest of the existing bonded indebtedness of said village as the same may accrue, and in paying warrants and orders heretofore issued or which (within the said maximum limits herein fixed), may be hereafter issued for expenditures made or liabilities incurred for municipal purposes, and all said warrants or orders, whether heretofore issued or hereafter issued, to be paid in the order and manner provided by the statutes of said state of Minnesota.

"(6) That in the event any controversy arises between said defendant village and said defendant water, light, power, and building commission, or between said village and said library board, with reference to any expenditure of any part of the above maximum amount, or with reference to incurring any liability within said prescribed limits, either by said commission or by said board, at any time during said four-year period, or with reference to any apportionment of any part of the said amount so allowed to be expended between all said defendants, then said controversy shall be referred to this court for appropriate disposition, and for the purpose thereof, this court retains jurisdiction of the pending suit, but in the meantime the total expenditures made or incurred by all of the defendants together shall not exceed the total of $8,000 a month from October 1, 1918, up to any given 1st day of April or 1st day of October during said period, plus all local municipal revenues actually collected as aforesaid.

"(7) That if defendants shall faithfully carry out the terms of this judgment and the injunction herein provided for, and shall abide thereby, but only in such event, then said plaintiff shall not question, nor be allowed to question, either in this suit or otherwise, any of the warrants or orders of said defendant village heretofore issued or the warrants or orders of any of said defendants to be hereafter, within the limit herein specified, issued during said four-year period, on the ground that they are in excess of the limitations authorized by law, nor shall plaintiff question, on the ground that they are in excess of the limits prescribed by law, warrants or orders for all lawful bills incurred during the latter half of August, 1918, and during the month of September, 1918, except for the purchase of that certain property, heretofore referred to as the Range Mercantile Company Building and lot, as to which said defendants shall be governed by the foregoing provisions.

"(8) That upon issuance of the writ of injunction hereinafter provided the restraining order now pending in this suit shall be vacated and set aside as to all the defendants, except as to matters covered thereby and which are enjoined and prohibited herein and in the injunction to be issued.

"(9) That a writ of injunction enjoining and restraining defendants as herein specified in paragraphs numbered 1, 2, 3, 4, 5, 6, 7, and 8, and in the form hereto attached, shall forthwith issue out of said court and under its seal, but that no costs shall be allowed to either party in the pending suit.

"Let a writ of injunction issue as above provided."

An injunction was also issued on the same day as provided in paragraph 9 of the decree and was duly served. On July 5, 1921, the plaintiffs in error were ordered to show cause why they should not be punished for contempt in violating the injunction. On July 18, 1921, there was a hearing on the order to show cause. It was shown and admitted that during the periods mentioned in paragraph 1 of the decree the village of Buhl had expended over and above the amount limited by the decree the sum of $232,615.78; that E. J. Morrisey, F. J. Demel, Jr., T. P. Corey, N. L. Johnson, Matt Kayfes, W. Jacobs, George R. Barrett, and A. Chere, as officers of said village of Buhl or members of the two boards hereinbefore mentioned, had intentionally and knowingly taken

part in violating the injunction as to the expenditure of money or the contracting of obligations in excess of the amount limited by the decree. They were found guilty of contempt by the court, and sentenced to imprisonment for a period of 60 days each in the county jail for St. Louis county, Minn., whereupon the plaintiffs in error brought said judgment here for review.

Warner E. Whipple, of Duluth, Minn. (A. R. Folsom, of Buhl, Minn., on the brief), for plaintiffs in error.

W. D. Bailey and Alfred Jaques, U. S. Atty., both of Duluth, Minn. (Washburn, Bailey & Mitchell, of Duluth, Minn., on the brief), for defendants in error.

Before CARLAND, Circuit Judge, and TRIEBER and POLLOCK, District Judges.

CARLAND, Circuit Judge (after stating the facts as above). We do not stop to consider whether the proceeding to punish plaintiffs in error for contempt was civil or criminal, or brought here by the right method. Section 1649a, U. S. Comp. Stat. (39 Stat. 727), nor whether the decree entered pursuant to the stipulation was anything more than a contract between the parties which had received the approval of the court. 21 C. J. p. 815. We shall assume for the purpose of this case that the decree was strictly judicial, but even so the stipulation manifestly could not confer power upon the court to do that which the court could not do under any known rule of equity jurisprudence. The only defense made in the court below or here by plaintiffs in error was, and is, that the trial court had no jurisdiction of the subject-matter dealt with in the decree. Ex parte Reed, 100 U. S. 13, 23, 25 L. Ed. 538; Ex parte Fisk, 113 U. S. 713, 5 Sup. Ct. 724, 28 L. Ed. 1117; In re Nielsen, 131 U. S. 176, 184, 9 Sup. Ct. 672, 33 L. Ed. 118.

Laying aside this contention for a moment, we notice what seems to us a vital defect in the decree, which in our opinion rendered the injunction issued upon it absolutely void; that defect being that the decree did not adjudge the plaintiffs in error guilty of anything. It did not find that they had violated any law, statutory or common, or that they had been guilty of fraud or abuse of discretion. One might gather from the decree that in the opinion of the court the village officers were spending too much money, from the fact that the decree limited the amount which they should spend during certain periods for four years in the future, but this inference alone would not sustain the injunction. The contention of counsel for plaintiffs in error that the court had no jurisdiction of the subject-matter is based upon the proposition stated by counsel substantially as follows: That the determination by the trial court in advance of the extent of the financial necessities of the village of Buhl for a period of four years in the future wherewith to enable it to function governmentally and discharge the public, political, and governmental duties imposed upon it by reason of its character as an agency of the state government was a matter wholly nonjudicial in its character, and one which was confided exclusively by law to the legislative or administrative judgment and discretion of the plaintiffs in error, constituting in their collective official capacity the village council. We are clearly of the opinion that the contention of counsel is

sound. East St. Louis v. Zebley, 110 U. S. 321, 324, 4 Sup. Ct. 21, 28 L. Ed. 162; Clay County v. McAleer, 115 U. S. 616, 618, 6 Sup. Ct. 199, 29 L. Ed. 482; Meriwether v. Garrett, 102 U. S. 472, 26 L. Ed. 197; New Orleans Waterworks Co. v. New Orleans, 164 U. S. 471, 17 Sup. Ct. 161, 41 L. Ed. 518; Alpers v. San Francisco (C. C.) 32 Fed. 503. opinion by Justice Field; McChord v. L. & N. Ry. Co., 183 U. S. 483, 22 Sup. Ct. 165, 46 L. Ed. 289; 21 C. J. 156; 10 R. C. L. 93.

We are unable to find that the decree entered falls within any acknowledged head of equity jurisprudence. The trial court was wholly without jurisdiction to punish the plaintiffs in error for contempt, and therefore its judgment was and is void. We may properly say that the allegations of the complaint, if proven, show a state of affairs in regard to the expenditure of public moneys by the officers of the village of Buhl that call strongly for legislative action by the state of Minnesota, and we must presume that such action will be, if not already, taken. So far as our own jurisdiction is concerned, the jurisdiction of the trial court is questioned only as a court of equity, and not as a federal court. Therefore this court has jurisdiction to review the judgment in contempt.

Judgment reversed.