### CITY OF WHEELING et al. v. JOHN F. CASEY CO.
### No. 4134.

Circuit Court of Appeals, Fourth Circuit.
April 6, 1937.

Jay T. McCamic, of Wheeling, W. Va. (Wesley R. Tinker, Jr., Charles McCamic, Russell B. Goodwin, and Benjamin L. Rosenbloom, all of Wheeling, W. Va., on the brief), for appellants.

Robert J. Riley, of Wheeling, W. Va. (T. S. Riley, of Wheeling, W. Va., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is a petition for a mandamus filed in December, 1935, by the appellee, a Pennsylvania corporation here referred to as the petitioner, in the District Court of the United States for the Northern District of West Virginia, at Wheeling, asking that the appellants, here referred to as respondents, be required to pay a judgment obtained by the petitioner against the respondent City of Wheeling or to lay a special levy sufficient to satisfy said judgment. The City of Wheeling is a municipal corporation of the state of West Virginia and of the respondents, Harry J. Humphrey is city manager, Charles F. Schultze is mayor and member of the council, and Benjamin L. Rosenbloom, Russell B. Goodwin, Chester W. McElroy, John J. Mathison, Paul Duffy, E. W. S. Neff, Dr. M. Gaydosh, and William J. Cotton[1] are members of council of said city.

The original petition was amended and respondents demurred which demurrer was overruled by the court below in January, 1936, and thereupon the respondents in February, 1936, filed a joint and separate answer to which the petitioner filed a demurrer and certain replications. This demurrer of petitioner to respondents' answer was sustained and on September 3, 1936, the court entered a peremptory writ of mandamus directing the payment of the judgment or the laying of a special levy for that purpose. From this action of the court below this appeal was brought.

The judgment of the petitioner was for the sum of $75,000, with interest and costs and was obtained in a suit in assumpsit, against the City of Wheeling, in June, 1932. The case was appealed to this court where the judgment was affirmed. 74 F. (2d) 794, certiorari denied 296 U.S. 593, 56 S.Ct. 106, 80 L.Ed. 420. After the filing of the petition for mandamus herein the petitioner sought by an equity proceeding to subject certain specific funds of the City of Wheeling to the payment of its judgment which relief was granted by the District Court. On appeal to this court the action of the court below was reversed (85 F.(2d) 922), on the grounds, as stated in the opinion, that the District Court did not have jurisdiction to direct or control the disposal of any particular fund; that the plaintiff had an adequate remedy at law and that no irreparable injury would result to the plaintiff.

Upon the last-mentioned decision of this court the petitioner proceeded with its mandamus proceeding. Statement of the facts with regard to the obtaining of the original judgment and the denial of the right to control the legislative action of the council of the City of Wheeling will be found in the two opinions of this court, above cited.

It is here contended on behalf of the respondents that the City of Wheeling had no power to lay a levy for the purpose of paying petitioner's judgment; that the judgment did not constitute a debt permitting a special fund to be raised by a levy for its payment; that the judgment was not a current expense and was not shown to be based upon an obligation for which there was a special fund or for the payment of which the City of Wheeling had the power, authority, or obligation to raise a special fund; that the courts should look through the judgment to determine whether the claim on which the judgment is based is a contract which the refusal to pay constituted an unconstitutional abridgment or impairment; that if the courts should look through the judgment

[1] William J. Cotton was appointed a member of the council of the City of Wheeling in the place of Ambrose F. Habig, deceased. Habig was a party respondent named in the original petition and by order the said Cotton was substituted as a party.

the facts would show that the alleged claim was void and would not therefore compel the payment of the judgment; that the court below should not have refused to permit the respondents to plead what the contract was and thus show its alleged unconstitutionality; and that the court should have held that the debt, upon which the judgment was based, was void and uncollectible, such a contention not being a collateral attack upon the judgment.

There are two questions raised on this appeal.

First: Has the petitioner a valid judgment against the City of Wheeling?

Second: If the judgment is a valid one has the City of Wheeling the power to levy a tax to pay it?

We think both questions must be answered in the affirmative. The validity of the judgment has been twice passed upon by this court, first when the judgment was affirmed (74 F.(2d) 794), and again when we held that petitioner could not avail itself of an equitable remedy because it had an adequate remedy at law in a mandamus proceeding (85 F.(2d) 922).

■ A judgment "is a finality as to the claim or demand in controversy * * * not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." Cromwell v. County of Sac, 94 U.S. 351, 352, 24 L.Ed. 195, quoted with approval in U. S. ex rel. Harshman v. Knox County Court, 122 U. S. 306, 318, 7 S.Ct. 1171, 1176, 30 L.Ed. 1152. In the latter case the court said: "The bar is all the more perfect and complete in this proceeding because it is not a new action. Mandamus, as it has been repeatedly decided by this court in such cases as the present, is a remedy in the nature of an execution for the purpose of collecting the judgment." (Citing cases.)

■ All of the defenses to the judgment that are now urged on behalf of respondents were presented in the two cases that we have passed upon and not only these defenses but whatever could have been urged to prevent the rendition of the judgment cannot now be urged to prevent its enforcement. Kaill v. Board of Directors (C.C.A.) 194 F. 73; U. S. ex rel. Ranger v. New Orleans, 98 U.S. 381, 25 L.Ed. 225; Tucker v. Hubbert (C.C.A.) 196 F.

849; State ex rel. Smith v. Hall, 94 W.Va. 400, 119 S.E. 166.

■ It is well settled that such a judgment cannot be attacked collaterally. City of Wheeling v. Casey Company (C.C.A.) 85 F.(2d) 922, and cases there cited. In the latter case will be found a discussion upon this point with citation of authorities. The same question was there raised as is here presented.

"A proceeding to enforce a judgment is collateral to the judgment, and therefore no inquiry into its regularity or validity can be permitted in such a proceeding, whether it is a direct action on the judgment * * * or a proceeding by mandamus to compel the payment of a judgment, or to compel the levy and collection of a tax to provide funds for the payment of the judgment. * * *" 34 C.J. 522.

We see no reason to change our opinion that the judgment is a valid one.

In considering the second question we find that the charter of the City of Wheeling authorizes the city council to levy a general tax, among other purposes for " * * * and all necessary, ordinary and contingent expenses of the city, not otherwise provided for. * * *" This provision was incorporated in the amendment to the Wheeling Charter found in chapter 11, section 76, Acts of the Legislature of West Virginia 1919, and also in the charter of said city as re-enacted in chapter 141, Acts of the Legislature, 1935 (section 60).

It is admitted that the City of Wheeling had the power to enter into the contract for the construction of the waterworks plant and the power to raise money for the purpose by the issuance of bonds. Section 494 of the West Virginia Code of 1932 confers plenary power upon the council of a municipality of the state, by ordinance or resolution, to authorize the erection of waterworks within or without the town; and article 10, section 8 of the West Virginia Constitution authorizes a municipal corporation to issue its bonds not exceeding in the aggregate 5 per cent. of the value of the taxable property therein, on condition that an annual tax sufficient to pay the principal and interest of the debt within thirty-four years is provided, and on condition further that no such debt shall be contracted unless the questions connected with the same should receive three-fifths of the votes cast in an election held for the pur-

pose. The construction of the waterworks at a cost of $2,000,000 and the issuance of bonds in that sum was authorized at a municipal election duly held, and all of this sum, including $481,500, the amount of the contract awarded to the John F. Casey Company, was paid out to the contractors except $895.36 which was transferred to other city funds.

 It is no' defense to the collection of the judgment in this case that the payment of it would exceed the amount of the bonds authorized to be issued by the city for such construction, because the city, in the exercise of its power to construct the plant, was not limited to the amount of the bonds authorized to be issued. Village of Oshkosh v. State of Nebraska ex rel. Fairbanks, Morse & Co. (C.C.A.) 20 F.(2d) 621. The city might well ask for an authorized bond issue for only a part of the amount necessary to construct the waterworks; and having authority to enter into the contract with the petitioner for the erection of the waterworks, the city is bound for any claim legally growing out of the contract and the authority to levy a tax to pay such a claim must necessarily follow. The express power to construct certain public works is not limited by statutory restriction on a municipality's power to issue bonds therefor. 44 C.J. 70. ·A discussion of this question will be found in Village of Oshkosh v. State of Nebraska, supra, where the points raised were very much like the points raised here.

 Moreover, the charter of the City of Wheeling (section 60, Acts 1935, c. 141), provides amongst other things that subject to the limitations of the state law prescribing the aggregate of all levies for. city purposes, the council shall annually cause to be levied and raised by general tax upon all taxable property in the city not only an amount sufficient to pay the interest on any installment of principal of the public debt falling due within the year, but also an amount which with' the revenue from any revenue-producing works owned by the city, will be sufficient to defray the expenses for the next fiscal year of all the works and property, the salaries of officers and wages of employees of the city, "and all necessary ordinary and contingent expenses of the city, not otherwise provided for." It is also the duty of the council to make up a statement annually in August showing amongst other things the debts and demands owed by the municipal-

ity that will become due and payable during the current fiscal year, including interest on any indebtedness funded, bonded or otherwise, and the amount necessary to be raised by a levy of taxes. Acts of West Virginia Legislature 1919, c. 126, § 8. The judgment debt in this case is a debt owing by the municipality, and represents a necessary and contingent expense for the payment of which the city must provide by taxation.

 It is contended on behalf of the respondents that limitation of levies by the city fixed by the Legislature of West Virginia and a constitutional amendment passed after the rendition of the judgment here, make it unlawful for the city to lay the levy directed to be laid. Having reached the conclusion that the city had the power to lay the levy at the time the judgment was rendered, no subsequent legislation can affect the collection of the judgment here.

"The legislature of a State cannot take away rights created by former legislation for the security of debts owing by a municipality of the State or postpone indefinitely the payment of lawful claims until such time as the municipality is ready to pay them." Louisiana ex rel. Hubert v. New Orleans, 215 U.S. 170, 30 S.Ct. 40, 54 L.Ed. 144 (Syllabus). See, also, Seibert v. Lewis, 122 U.S., 284, 7 S.Ct. 1190, 30 L.Ed. 1161.

Such legislation would be in violation of section 10, article I, of the Constitution of the United States as impairing the obligation of a contract.

 We are of the opinion that the City of Wheeling has the power to lay the levy as directed by the court below. ·Should the levy be burdensome, if collected in one year, upon proper showing the court below could direct it to be distributed.equally over a period not to exceed ten years. Article 1, section 12, chapter 94, of the Acts of the West Virginia Legislature, Second Extraordinary Session 1933. No such showing has been made.

A discussion of the power of a municipality to lay a levy for the purpose of paying a debt will be found in a number of decisions of the Supreme Court of Appeals of the state of West Virginia. Fisher v. City of Charleston, 17 W.Va. 595, 597; Foster v. City of Charleston, 112 W.Va. 510, 165 S.E. 670; Wells v. Mason, 23 W. Va. 456; Wilson v. County Court of Clay County, 114 W.Va. 603, 175 S.E. 224.

312

It seems unnecessary to repeat the discussion of the other points here raised as they were passed on in our. former decisions with respect to this judgment. The City of Wheeling entered into a contract with the petitioner and the claim, upon which the judgment is based, grew out of that contract. The judgment should be paid as a just debt of the city. No defense has been presented that justifies the evasion of the payment at law, and certainly such an evasion can find no moral justification.

The judgment of the court below is affirmed.

Affirmed.